Good morning. My name is Richard Levine. Can you hear me? My name is Richard Levine. I'm here representing Natalia Fridman, the appellant. There are quite a few issues in this case that fall into two basic categories, the collective entity doctrine and the foregone conclusion doctrine. They all have to do with the protection of the Fifth Amendment with respect to documents. This case was here before this Court a couple of years ago. Judge Loyer, I think, was on the panel at that time, and the case was — the district court's order was vacated and the case was remanded. Some of the issues that were involved in the prior appeal were no longer issues here. I'd like to address the collective entity doctrine, because the issue here is whether or not a traditional trust, a common law trust, is a collective entity. We know from Supreme Court authority that a collective entity, such as a corporation, a business partnership, a union, doesn't have Fifth Amendment protection, so it cannot assert Fifth Amendment protection. There are some issues which I'll come to, I hope, with regard to whether or not a custodian of records can assert his personal privilege, but the corporation itself, the entity, doesn't have a privilege. It's a matter of first impression in this Court whether a traditional trust is a collective entity. Now, we cited in our brief the AmeriCode case. The AmeriCode case — This is the State of other circuits on that issue. Well, there are four cases that are usually cited for this proposition, and I don't think any of them are applicable to a traditional trust. One case is a Ninth Circuit case in 1980, Inouye Grand Jury. The so-called trust, it had a label of a trust, but it was a tax advisory service business. Another case, which was — another Inouye Grand Jury case, which was the First Circuit case in 1992, involved a partnership of two individuals. The name on the entity was trust, but it was involved in the sale of condominiums, over 100 condominiums. That's not a traditional trust. That's a business entity. The Supreme Court in AmeriCode made a sharp distinction between an entity that just has trust in its name, which is really a business operation, and a traditional trust. The Court has said, and New York law also says, that a traditional trust is not an entity. It's a relationship between a trustee and the beneficiaries and the set law or grantor. Here — and the two other cases, I should say, that are cited, a case by name of Harrison, was decided in 1980, an Eighth Circuit case, U.S. v. Harrison. The Court characterized it as a separate business entity under Missouri law. And the fourth case, Watson v. Commissioner, was a per curiam opinion that simply cited, I believe, Harrison, but it wasn't a business entity. It didn't — it was not clear that it involved a traditional common law trust. Now, in AmeriCode — But all those cases are trending away from the proposition you want us to embrace. I wouldn't agree with that, Your Honor, because the Supreme Court mentioned in AmeriCode that just because an entity has trust in the name doesn't mean it's a collective — it doesn't mean it's an entity or a traditional trust. And so — and that — the language that was in AmeriCode was cited most recently by the Supreme Court again in a case called North Carolina Tax Department against the Kessner Family Trust. I have the site here, but it's — you know, it was decided in June of this year after our briefs were filed. 139 Supreme Court, 2213 is the unofficial site. And, you know, the Court reiterates that, as traditionally understood, the arrangement that results in a traditional trust is not a distinct legal entity, but a fiduciary relationship between multiple people. So I would submit to the Court that the — that the Court and the law should favor protecting Fifth Amendment privilege. It shouldn't try to narrow Fifth Amendment privilege. And so there's really no authority — no real good authority that — for Fifth Amendment privilege to be a distinct legal entity. There's authority that traditional trust is a collective entity. There's authority that — But there isn't any that says it isn't. Excuse me? There isn't any — No, there is no authority that says it — One way or another, there's no authority with respect to — There's no clear authority. We have some authority that it's — it's different when it comes to jurisdiction. That's AmeriCode. That's AmeriCode in the North Carolina case, which involves specifically a trust. And AmeriCode involved a real estate investment trust. And the Court said just because you have trust in the name doesn't mean that the attributes of a trust apply to a business entity. Those entities cropped up, what, back in the late 70s, early 80s? 1980. Provided all of us a lot of business at the time, I think. So — so that's a — that's an important issue that affects quite a number of the requests — the document requests that are here. But I want to move on, if I may, to another aspect of this collective entity. Let's assume that — What is it — may I just interrupt you for one second? I'm sorry? May I interrupt you for one second? Sure. So I grant you that just having the name tag trust doesn't render a trust a trust for purposes of the collective entity doctrine or any other doctrine. But what is it about this trust that you could point to that would distinguish it from, you know, the ordinary business enterprise or something other than a personal — or something other than a, you know, sort of a — yeah, a personal entity? Well, if it is personal, I think you should have a Fifth Amendment privilege of the whole point.  Well, a copy of the trust is in the appendix. It's an exhibit to the Declaration of Revenue Agent Kobayashi. And it's basically a trust created by one woman, Golda Kippersmith, for the benefit of her grandson, David Marcello Fridman. And her son-in-law, Natalia, was the trustee. And the Kobayashi Declaration that's in the record — What page is that? I think it's — I think it's A-74-6. I don't have the — 76. 76. It's an exhibit. It has the — Got it. Okay. It's almost a perfect traditional common law trust. Grandma sets up a trust for her grandson. And by the way, her daughter is not mentioned in the trust because she had passed away when David, her grandson, was an infant. But — so it's a trust set up by this woman. And by the way, the documents in the record shows that it was — it's a New York trust, governed by New York law, established by a prominent New York law firm at the request of Golda Kippersmith, who was not a U.S. person, by the way. But I want to mention that although — apart from the question of whether a traditional trust is a collective entity, you have the point in half a dozen of these requests where the government says, we want certain documents relating to that trust and any other trust of which you are a beneficiary or a trustee. That's the equivalent of asking Mr. Fridman, please give us the names of any other trust of which you are a trustee or beneficiary. That's pure testimony. That's not just document requests. Give us the document that show that you are a beneficiary or a trustee is testimony. That's — so even if it's a collective entity, you're asking someone to provide testimony from his own lips. But the main issue is this David Marcello trust. Yes, Your Honor. Is that fair? And is your point that this trust, because it's just a one-grant tour to one person, can't possibly under the collective entity doctrine count? Well, I think — Anything other than really a personal — triggering a personal privilege. Right. It's basically a personal privilege. So you're back to the personal privilege of an individual's Fifth Amendment privilege, not the exception to the rule of a collective entity such as, for example, a corporation or a business partnership. And the fact that some cases had the name trust in it doesn't matter. But I would like — But this is a trust. This is a trust. Yes, it's a trust. The trust is — Second. And by the way, this Court in Louvier — Mr. Fridman is the trustee for this trust. No. She's the grantor. Her — my client, Natalia Fridman, is the trustee. She set up the trust with her money. The client is the person who's been subpoenaed. My client is the person who's subpoenaed. Natalia Fridman, yes. Natalia Fridman. He was a trustee. The principal beneficiary was intended to be his son, the settlor's grandson. And so he should have his personal privilege, because if it's not a collective entity, then the exception to the rule about Fifth Amendment privilege doesn't apply to this entity, this trust, which is not an entity. And by the way, this Court in Louvier, relying on Americold, also cited or recited that a traditional trust is not an entity. It's a relationship. And so there's no reason to try to impose a collective entity exception on such a document. But beyond that, some of the document requests here, they're referred to in our brief, request documents with respect to any other trust of which you are a trustee or beneficiary. In the declaration of one of the revenue agents, I think it was Teresa Alvarez who said, well, we want to know what else might be out there because maybe Mr. Fridman is using other trusts to hide money. And we don't know what they are, so he should tell us. Oh, but he shouldn't give us the name. He should just give us the documents that show the name. Well, there's no difference. It's still testimony by conduct. Just because you're producing a document doesn't mean it's not conduct. It's testimony by conduct. Your time has expired. Thank you. You've received two minutes for rebuttal. Thank you. We'll hear from the government. May it please the Court, my name is Talia Kramer. I'm an assistant United States attorney, and I represent the United States in this matter. To the issue that was just being discussed about whether what has been referred to as a traditional trust, we could also call it a common law trust, is a collective entity. The key principle under Supreme Court case law is whether an entity has an institutional identity that is separate from just the personal identity of its individual members. It does not need to be a formal legal entity. It does not need to be recognized under the law as a juridical entity for any specific or for all purposes. The Second Circuit has previously held that a partnership of individuals before they formed a formal partnership, when they were just conducting business together but hadn't formalized their status in any way, counted as a collective entity. And what courts in all of these cases have done, and what courts in the other circuits to have considered the trust question have done, is looked for indicia of whether these people are holding themselves out as something separate from just an individual person's private interests. And those features are present in a common law trust. A common law trust, as described, for example, in the restatement, necessarily has three elements, not just a trustee, it is not just an alter ego for the trustee, but a trustee, beneficiaries, and trust property. The trust agreement lays out various duties that the trustee is bound by. The restatement and common law lay out certain duties that the trustee has, including, for example, to deal with the property for the interest of the beneficiaries. The beneficiaries have certain rights in the records of the trust, a right to access of the trust records. These are all features that the Supreme Court ---- What about all these other trusts? The other trusts for which the government is seeking records?  Yes. What are these other trusts? So, the government knows for sure that there are three trusts with which Mr. Friedman is associated. One is the David Marcello Trust. He is one of two trustees of that trust. It has two trustees. The second is that the same trust agreement that created that trust creates a second trust. We don't know what the name of that trust is, but we have the trust agreement creating it. And then, over the course of this litigation, Mr. Friedman voluntarily produced a trust so there are at least three trusts that the government knows of by name. As for the unidentified trusts, if we accept that a trust is a collective entity, the Supreme Court has held very clearly that a person who holds a collective entity's records in a representative capacity simply has no Fifth Amendment privilege and cannot assert a Fifth  Amendment privilege.    And so, we have heard, we know about these other trusts that would lead us to or that would lead the district court conclusively to determine that Mr. Friedman is not acting in a representative capacity, or to — I'm sorry, to determine that he is acting in a representative capacity. So, this question of who has the burden of showing whether Mr. Friedman is acting in a representative capacity is an issue that Mr. Friedman has raised for the first time on appeal. So, it was not before the district court, and the district court did not decide it. However, let me give you an analogy. So, when the government issues a subpoena to a person, for example, for email communications, it is on that person in the first instance to go through those documents and determine whether they think, based on existing law, any of those communications are protected by the attorney-client privilege. They can make that determination, produce the documents that are not privileged, and then assert a privilege over those that they determine are legitimately privileged. The burden, however, is on that person as the proponent of the privilege. This is clear in the law. The proponent of the privilege has the burden of asserting the privilege. So, in this case, if Mr. Friedman has documents at home that he knows he holds as a trustee for a trust, if we agree that a trust is a collective entity, or, for example, as an officer for a corporation, he simply has no Fifth Amendment privilege that he can assert over those documents, and he needs to produce them. Did the district court deal with any of these unknown trusts? The district court did hold that he needed to produce all trust-related records in response to the document requests that seek trust records, and some of the document requests for which a number of the document requests that relate to trusts ask for any trust for which Friedman is a trustee or beneficiary, including, but not limited to, the David Marcello Trust. And some you don't know about. You don't know what the trusts are. That's correct. That's correct. We don't know what they are, but to the extent— Or if they even exist. Excuse me? Or if they even exist. That's correct. The government doesn't know that. But there is not a problem here with him providing testimony, because if he holds these documents in a representative capacity for a collective entity, he cannot resist producing them under the Fifth Amendment, even if there are testimonial aspects to the act of production. That is what Braswell holds, the Supreme Court's decision in Braswell. It doesn't matter if there is a testimonial aspect to turning over those records. You cannot assert a Fifth Amendment privilege over them. That's a great rule, yes. But I'm just a little—you know, what's odd is that the district court goes through, just Morero goes through in a very specific way, the David Marcello Trust, some other trusts, analyzes those trusts, but that's not the case with respect to the trusts that we're talking about, that you're not even aware that they—you don't even know that they exist. So where's the analysis? How can we deal with—and I understand your broad Braswell-related argument, but usually we require some record. So the question that was before the district court, the broader question was, is what's been called a traditional trust or a common law trust a collective entity? And the district court held, relying in part on the four circuits that have answered in the affirmative with respect to the kinds of trusts before them that they are, and therefore require the respondent to produce all trust-related documents sought by the document requests. Again, this—the focus on whether the government knew or didn't know whether Mr. Friedman held those other trust documents in a representative capacity was not raised as an objection by Mr. Friedman below. So it wasn't quite as clear—that question wasn't clearly crystallized as an issue with the district court. Is your—is your argument now that he actually forfeited any objection to the—relating to the unknown trusts? We do think that he forfeited the argument that it is the government's burden to first show what his relationship is to these unknown trusts before it can get the documents under the collective entity doctrine. However, beyond that, we also think that that is dictated by the courts holding in Braswell. What the district court did reach and hold is that any trust that has the features of a common law trust is a collective entity for Fifth Amendment purposes. And the district court went on to hold that Mr. Friedman must produce all trust-related documents responsive to the document requests that seek trust documents. So the district court did reach this issue. But even if you don't know what they are, but he knows, he must produce them. That's—that's— That is the government's position, yes. What if he is the trustee? What if he is some other—some actor other than—I mean, what if he's a beneficiary? We—we—there could be a situation where he is not acting in a representative capacity, correct? Yes. And—and it would be on him to—to respond to the government's— That goes back to the burden issue. Yes. That goes back to the burden issue. Mr. Friedman could say, I do not hold any other trust-related documents in a representative capacity, but he has not done that in this case. It—he could make that simple statement to— So that goes back to my question. He has—your argument is that he has forfeited that entire argument. That is not—I'm sorry, let me clarify. That is not my position. My position is that he has forfeited the argument that the government has the burden of his relationship to a collective entity before the government can get collective entity documents from him. However, what we think is the appropriate way for this to go is because the burden is on him, the burden is on him to respond to the government's document requests, and instead of saying, I need the government to first prove my relationship to all these entities— If we were to affirm— Yes. What would we be affirming? What we are asking the court to affirm is the ruling that to the extent Mr. Friedman holds documents responsive to the summons as a representative for a collective entity, which includes what he is calling traditional trusts, he is obligated to produce them. There will be some process that he goes through sifting through his documents and figuring out how to apply that ruling. That would be the time when production was due to say, I don't hold them, I don't hold any of the trusts in a representative capacity, or on these trusts that I refuse to name, I am not in a representative capacity. Yes, he could do that at that time. He could have, and it would have been appropriate for him to do it when resisting summons enforcement, but he didn't do that. And that might engender or generate further litigation, but at least that would be a response available to him. That's right. At this point, he has refused to respond altogether. I will also note that with respect to the corporate records, where he has also advanced this argument that the government first has to prove that he holds any corporate records in a representative capacity, what Mr. Friedman actually did represent to the district court below is that he does not hold any records responsive to Document Request 3, which seeks corporate records, in an individual capacity. He said that below. So to the extent he does have responsive records for Document Request 3, he holds them in a representative capacity, and he must produce them. I see my time is up. Yes, but let's take the second issue, the foregone conclusion doctrine on papers, since Mr. Levine didn't get to discuss it either. But, of course, we've read your briefs on this issue. So if the Court has no further question, then we ask the Court to affirm the district court's decision. Thank you, counsel. Mr. Levine. I won't address foregone conclusion for the reasons Your Honor just said. However, the proposition that the government has presented to this Court is radical. There's absolutely no authority for it anywhere that if the government says produce all records relating to a collective entity which you hold, even if we don't know what they are, you have to produce them. Absolutely no authority. Every case that we've seen involving collective entity, and most of them relate to corporations, the government has shown in its initial presentation that the respondent was the custodian of collective entity, of that entity, that corporation's documents. Your colleague says that you forfeited this argument. We did not forfeited the argument. I'll tell you why we didn't forfeit the argument, for a couple of reasons. First of all, there were two summonses served here. One summons was served to Natalia, and it's in the appendix. One summons, they're identical summons except for the title, and the documents requested are identical. One summons is served on Mr. Friedman in his capacity as the trustee of the David Marcello Trust, and the other is served on Natalia Friedman in connection with his personal, personally, and all of them relate to his personal income tax liability for the year 2008. No reference to any corporation involvement in this proceeding or in this inquiry. They're not looking for any corporate records. Did you provide that answer to the government? Yes. We argued this vociferously, if you will, in the papers, whereas there wasn't much of a hearing. The second round, there was no oral argument, although we both sides requested oral argument, but there was none. But we made it. We didn't forfeit this argument. We made it very clearly that there's no basis, and there isn't a single case where the respondent was the custodian of records. And there's no presentation anywhere in this record that Mr. Friedman was a custodian of entity records, any corporate records they were referred to in, you know, one of the arguments in this case. And with respect to any trust other than the David Marcello Trust, which we know is an issue, whether it's collective entity. Maybe I've misunderstood what you're saying, and forgive me if I have. But I understood the government to articulate the following position, that in this context, it's up to you, that is, your client, to put up or shut up. That is, to make the argument that you are not the custodian, that it's actually a personal trust, it's a personal whatever, and therefore you're not acting in a representative capacity, and so Braswell doesn't apply. What's wrong with that argument? It's radical, you say. It's radical because there's no authority for it, number one. It's radical because the respondent is asserting his Fifth Amendment privilege. And so the government is saying, if you're a custodian of collective entity records, of a corporation's records, any corporation on the planet, you have to show us that you're not. So now the respondent, first of all, has to come out of his mouth to explain things, and he's asserting his Fifth Amendment privilege, so it's contrary to the whole idea of his They said produce these records, and your response could be, I am not the custodian of those records. Right. But they asked for it in connection with a personal subpoena, Your Honor, not in connection with a corporate inquiry. And so there was no occasion to say, I'm not the custodian. Why should I have to testify about what I'm not going to am, what I am not, and why should I have to actually testify in response to something? In your argument, anybody who set up a trust off in the corner over there, which doesn't have to keep records but becomes an enforceable agreement or relationship under the laws of the state of New York, which has no outward-facing appearance that you can just hide, the taxpayer can just hide. Well, let's not characterize every trust as hiding something. But I think the point is that the government is But there's a Fifth Amendment privilege here. By asking someone to produce all records for every collective entity, you're asking the person to tell the government every collective entity. For every collective entity for which you are a custodian. I'm supposed to admit that I'm a custodian. Yeah. Isn't that the door? So, for example, with respect to the act of production of privileges broadly, isn't that the door? It's when you receive a subpoena and you are the, you know, you're the recipient and you say, look, I'm going to assert my privilege. You've got to say why you're asserting the privilege. And if you're asserting the privilege on the ground that you're not the custodian and that it would require you as a personal matter to provide, in effect, testimony, then you've got to provide that answer. That's not a separate Fifth Amendment problem. Well, the problem here is that you receive a summons in connection with your personal tax liability issued to you personally, not as custodian of records. The government can't ask you to please tell us the names of all corporate entities of which you are a custodian of record. The government has to make an initial showing. Every single case that you'll see in the record where the government has shown that the person as a predicate to enforcing a collective entity summons or subpoena is that the respondent was a custodian of records. Every case. You won't find a single case that's different. The government's got this radical idea that if you're a custodian of corporate records, you have to tell us what they are, and if we give you the name of some company, we don't have to show anything. There's no authority for that. They do appear to know the names of the companies. Well, they have companies, but they don't know that I'm a custodian. They didn't send it to me in my capacity as custodian. Now, we did object. We objected that the – Are they permitted to ask, are you a custodian? I don't think that they're permitted to ask that question. We know this entity out here. Are you a custodian? I don't think they're – not if I assert my Fifth Amendment privilege. What privilege? Well, the government has told us in its presentation, in the affidavit of the declaration, excuse me, of its revenue agent, that they think that these companies are used to hide money, laundering money, whatever they're looking for. It was criminal activity, unreported income. And so why should my client have to answer any questions that would help the government provide information in the link of a chain that leads to criminal prosecution or – Well, Braswell seems to suggest that there are – I don't think Braswell says that, Your Honor. Okay. Thank you. Thank you. Thank you both. Thank you. Thank you.